IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**ESPERONDA BAKER**                                                                         **PLAINTIFF**

**V.**                                                                    **CIVIL ACTION NO: 1:09-CV-36**

**ROGERS LEE HOLMAN, In His Individual**                        **DEFENDANTS**
**Capacity, and CITY OF OKOLONA, MISSISSIPPI**

### MEMORANDUM OPINION

Before the Court is Defendant, City of Okolona, Mississippi's, Motion for Summary Judgment [97] and Motion to Strike Plaintiff's Expert Witness [99]. After reviewing the motions, responses, rules, and authorities, the Court finds as follows:

### I. BACKGROUND

In the early evening of July 2, 2008, Plaintiff, Esperonda Baker, received a call from her sister, telling her that they needed to go to the City of Okolona, Mississippi Police Station because her two younger cousins had been picked up by the police. After they arrived at the police station, Plaintiff's aunt called, requesting that Plaintiff return her aunt's car that she had borrowed; thus, Plaintiff left the station, and Officer Rahn Giddens agreed to drop Plaintiff's cousins off at her house. Later that evening, Plaintiff's cousins were dropped off at her house as requested.[1] According to Plaintiff, sometime in the early morning hours the following day, Rogers Lee Holman, a police officer employed with the City of Okolona, appeared at her house claiming that he had chased some children to Plaintiff's aunt's house and that he needed

---

[1] Plaintiff does not know which police officer dropped her cousins off at her house. Plaintiff states that she did not speak to any officer at that time, but she assumes that it was Officer Giddens.

Plaintiff's assistance. Plaintiff states that this was the first time she had ever met Holman, but she agreed to accompany him to assist in locating the children. Upon leaving Plaintiff's home, Holman drove in the opposite direction of where they were supposed to be going. Holman, while still on duty, drove Plaintiff to an isolated location at the Okolona Airport where he allegedly raped her.

Plaintiff brings this suit against Holman, in his individual capacity, and the City of Okolona under 42 U.S.C. § 1983 and state law. Municipal Defendant, the City of Okolona, Mississippi, filed its Motion for Summary Judgment on July 30, 2010, arguing they are entitled to judgment as a matter of law as to all accounts. In addition, the City of Okolona also filed a Motion to Strike Plaintiff's Expert Witness.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Rule 56(c) when evidence reveals no genuine dispute regarding any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." Little, 37 F.3d at 1075.

### III. ANALYSIS AND DISCUSSION

*Municipal Liability under Section 1983*

A municipality is a "person" subject to suit under Section 1983. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). A local government entity may be sued "if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 121, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) (quoting Monell, 436 U.S. at 690, 98 S. Ct. 2018). Alternatively, municipal liability may attach where the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval. Monell, 436 U.S. at 690-91, 98 S. Ct. 2018. "[M]unicipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001) (citation omitted).

The elements of the Monell test exist to prevent a collapse of the municipal liability inquiry into a respondeat superior analysis. See Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 415, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). A municipality may not be subject to liability merely for employing a tortfeasor. See, e.g., City of Canton, Ohio v. Harris, 489 U.S. 378, 392, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). Municipal liability requires

3

deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation. Id. at 391-92, 109 S. Ct. 1197.

  1. *Municipal Liability – Policymaker*

The first requirement for imposing municipal liability is proof that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality. Cox v. City of Dallas, Tex., 430 F.3d 734, 748-49 (5th Cir. 2005). A policymaker is "one who takes the place of the governing body in a designated area of city administration." Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). He or she must "decide the goals for a particular city function and devise the means of achieving those goals." Bennett v. City of Slidell, 728 F.2d 762, 769 (5th Cir. 1984) (en banc).

In this case, Plaintiff asserts that the City of Okolona's Chief of Police, Tommie Ivy, failed to implement policies and training procedures regarding sexual harassment and misconduct, and that this failure led to Plaintiff's alleged rape. Plaintiff contends, and the City does not appear to dispute, that Chief Ivy served in a policymaking role. Since Chief Ivy is the principal policy maker for the Okolona Police Department, he qualifies as an official policymaker for purposes of Section 1983 liability. See Fraire v. City of Arlington, 957 F.2d 1268, 1279 (5th Cir. 1992).

  2. *Municipal Liability – Official Policy or Custom*

Upon finding a policymaker, the Court must next consider whether the allegedly unconstitutional action constitutes a "custom or policy" of the municipality. The Fifth Circuit has identified two forms that "official policy" may take. First, a plaintiff may point to a policy statement formally announced by an official policymaker. See Webster, 735 F.2d at 841. In the alternative, the plaintiff may demonstrate a "persistent widespread practice of city officials or

employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." Id.

### a. Failure to Train

Plaintiff's first theory of municipal liability is that there is a "policy of inadequate training." Plaintiff contends that the City's lack of policies regarding sexual misconduct is the cause of Plaintiff's sexual assault. "A municipality's failure to train its police officers can without question give rise to § 1983 liability." World Wide Street Preachers Fellowship v. Town of Columbia, 591 F.3d 747, 756 (5th Cir. 2009) (citations omitted). However, when a plaintiff seeks to impose § 1983 liability on a municipality for its failure to train its employees, normal tort standards are replaced with heightened standards of culpability and causation. City of Canton, 489 U.S. at 391, 109 S. Ct. 1197. To prevail on a "failure to train theory" a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question. World Wide Street Preachers Fellowship, 591 F.3d at 756.

In this case, Plaintiff presents evidence that, according to Holman and Faye Wright, a code enforcement officer for the City of Okolona, Chief Ivy never specifically instructed law enforcement officers not to have sexual intercourse while on duty. Conversely, Chief Ivy and George Kirby, a police officer for the City of Okolona, testified that the Chief made it clear that officers could not engage in such activities during their shift. Along the same lines, Holman testified that Chief Ivy implied that engaging in sexual relations on duty was acceptable. Holman stated that Chief Ivy told him, "Don't take all night to do nothing." Holman contends that the Chief said this during a conversation about women.

5

There also appears to be a dispute as to whether or not the official policies adopted by the police department contain a reference to sexual misconduct. Holman testified that there was not a policy about sexual harassment or misconduct. However, the City, during Holman's deposition testimony, presented evidence, that does not appear to be disputed,[2] that the conduct and work rules for the police department contain a reference to "sexual or other unlawful or unwelcome harassment." Additionally, Plaintiff also claims that there is a policy in the police department of leaving officers unsupervised. Plaintiff bases this policy on the fact that officers do not have to consistently report to dispatch of their whereabouts. While this appears to be true, Holman testified that this alleged "policy" of not reporting was only when officers were merely routinely driving around.

Municipal liability will only attach if the municipality was *deliberately indifferent* to the constitutional rights of citizens. City of Canton, 489 U.S. at 388 & n.7, 109 S. Ct. 1197. Errors of judgment do not alone prove deliberate indifference, nor is such heightened culpability established simply by showing that a municipality could have ordered more or different training or even misjudged whether training was necessary. The Fifth Circuit has held that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," and that "for an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Estate of Davis ex rel. McCully v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir.2005). (citations and internal quotation marks omitted). Additionally, "[d]eliberate indifference requires

---

[2] Plaintiff's evidence that there is not a written policy against sexual harassment and/or misconduct stems from Holman's testimony. However, Holman did not dispute that the conduct and work rules that were presented contain a reference to such conduct. Holman merely claims that he does not remember seeing such a reference.

a showing of more than negligence or even gross negligence," and "[t]o satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." Id. (citations and quotations marks omitted).

The Court finds that Plaintiff's evidence fails to prove that the City of Okolona endorsed a policy or custom that would allow its police officers to believe that the City would ignore, excuse, or allow a police officer to forcibly rape a citizen. In a recent case very similar to this one, Lewis v. Pugh, the Fifth Circuit upheld the district court's grant of summary judgment to the City of Jacksonville, Texas. 289 F. App'x 767 (5th Cir. 2008). In Lewis, a police officer, Officer Pugh, while on duty and in uniform, offered the plaintiff a ride home; however, he instead took her to an abandoned trailer and raped her. Id. at 769. The plaintiff filed suit under Section 1983, claiming that the assaults by the officer violated her rights under the Fourth Amendment and that the city was liable for their failure to supervise, their hiring of Office Pugh, and their tolerance of misconduct. Id. at 770. In regards to the plaintiff's supervisory claim, the plaintiff presented evidence of the following: (1) plaintiff's deposition, stating that a detective told her that "they had a suspicion" about Officer Pugh; (2) the police chief's testimony that he was aware that Officer Pugh had molested a number of women, although not aware whether these events occurred before or after the plaintiff's rape; (3) evidence that Officer Pugh used excessive force without probable cause at a high school football game and that the police chief was aware of such conduct; (4) that an investigator interviewed several women who stated that Officer Pugh assaulted them; and (5) testimony of the assistant police chief, stating that he was aware that a number of women were alleging that Office Pugh committed sexual misconduct against them. Id. at 772. The Fifth Circuit held that "[e]ven accepted as true and taken as a

whole, the above evidence is legally insufficient to support a finding of deliberate indifference . . . In sum, there is no conduct from which it could be reasonably concluded that [the police chief] or the City *made a deliberate or conscious choice* to endanger constitutional rights." Id. at 772-73 (emphasis added).

With respect to the plaintiff's tolerating of police misconduct claim, the Lewis court also upheld the lower court's grant of summary judgment. Id. at 775. The plaintiff presented similar evidence as that discussed above, as well as other incidents of Officer Pugh's use of excessive force and that the police chief had once been suspended for lying to the City Manager and for improperly managing the police department. Id. at 774. The Fifth Circuit concluded that

> there is simply no evidence in the record that the City "tolerated" these incidents of misconduct or other incidents of this nature. To the contrary, the testimony in the record indicates that each of these incidents was investigated, and in some cases, including the case of Pugh, the officers were subsequently suspended. Lewis has presented no testimony that the City or Johnson condoned officers' use of excessive force or unlawful arrests. Further, given the relatively few number of incidents of allegedly excessive force and unlawful arrests, we cannot conclude that such behavior was sufficiently "widespread and pervasive" to demonstrate a pattern of unconstitutional behavior.

Id.

In this case, even if the Court accepts all of Plaintiff's evidence as true, Plaintiff cannot establish liability on the part of the City. Plaintiff created factual disputes regarding whether Chief Ivy explicitly told officers not to have sexual intercourse while on duty. Further, Plaintiff provided evidence, in the form of Holman's testimony, that the Chief made a vague statement allegedly relating to having sexual intercourse with women. However, as in Lewis, there is *no evidence* that any officer, including Officer Holman, thought the Chief or the City of Okolona would condone forcibly raping a citizen or any other form of sexual harassment and/or misconduct. Holman testified that the Chief would certainly not tolerate rape, and that the Chief

8

would not even tolerate consensual sex on duty if the officer got caught. Likewise, Holman conceded in his deposition that he does not know of any other officers having sex while on duty.

Also as in Lewis, there is simply no proof that the City tolerated this particular instance of misconduct. To the contrary, the incident was investigated and Holman was suspended and eventually terminated from his employment with the Okolona Police Department. Likewise, there is substantially less evidence presented here than presented in Lewis. There is no evidence of other incidents of misconduct on part of the Okolona Police Department, the City, Chief Ivy, or even Defendant Holman. As such, there is no conduct on behalf of the City from which it could be reasonably concluded that the City or the Police Chief "made a deliberate or conscious choice to endanger constitutional rights." Lewis, 289 F. App'x at 772-73.

Furthermore, as noted above, Plaintiff has only presented evidence of a single incident of sexual misconduct on behalf of law enforcement officers in the City of Okolona. A showing of deliberate indifference is difficult, although not impossible, to base on a single incident. Gabriel v. City of Plano, 202 F.3d 741, 745 (5th Cir. 2000). However, claims of inadequate training generally require that the plaintiff demonstrate a pattern. Davis v. City of N. Richland Hills, 406 F.3d 375, 383 n. 34 (5th Cir. 2005) (citation omitted). As noted in Lewis, "[p]roof of more than a single instance . . . is required before such a lack of training can constitute deliberate indifference." 289 F. App'x at 772 (citing Thompson v. Upshur County, 245 F.3d 447, 458 (5th Cir. 2001). Indeed, Plaintiff must "demonstrate that the municipality or supervisor had notice of a pattern of prior acts fairly similar to what ultimately transpired." Lewis, 289 F. App'x at 772 (internal citations omitted).

The Fifth Circuit has considered single violation liability several times, and, "with only one exception in some thirty years since Monell, has 'consistently rejected application of the

single incident exception.'" Thompson v. Connick, 578 F.3d 293, 299 (5th Cir. 2009) (citing Gabriel, 202 F.3d at 745); see also Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 288 (5th Cir. 2002) ("[T]his court has often rejected application of the single incident exception."); Snyder v. Trepagnier, 142 F.3d 791, 798 (5th Cir. 1998) ("[P]roof of a single violent incident ordinarily is insufficient to hold a municipality liable for inadequate training."). The sole exception, Brown v. Bryan County, involved a failure to train a neophyte on the constitutional limits to the use of force. 219 F.3d 450 (5th Cir. 2000).

The facts of Brown demonstrate that single violation liability applies only in extreme circumstances. In Brown, the offending officer was the sheriff's nephew who had been on the job for only a few weeks and had no education or experience whatsoever in law enforcement. Id. at 458. Moreover, shortly before joining the sheriff's office, he had been arrested for several crimes, including assault and battery. Id. at 454. In contrast, in this case, Holman has received training and was certified by law.[3] Further, there are no other allegations of sexual misconduct against Holman or any other officer. As noted by the Fifth Circuit, "[i]f there have been thousands of opportunities for municipal employees to violate citizens' constitutional rights, and yet there have been no previous violations, then the need for training is simply not 'so obvious.'" Thompson, 578 F.3d at 300.

b. Chief Ivy's Negligence

---

[3] The Fifth Circuit considers "compliance with state requirements as a factor counseling against a 'failure to train' finding." Zarnow v. City of Wichita Falls, Tex., 614 F.3d 161, 171 (5th Cir. 2010); see also Conner v. Travis Cnty., 209 F.3d 794, 798 (5th Cir. 2000). Likewise, the Fifth Circuit has explained that when officers have received training as required by state law, the plaintiff must show that the legal minimum of training was inadequate. See Benavides v. Cnty. of Wilson, 955 F.2d 968, 973 (5th Cir. 1992). Here, Plaintiff has not presented any evidence regarding Holman's police academy training and state certification.

Plaintiff brings a separate claim based solely on Chief Ivy's negligence in not adopting a policy against sexual harassment. The Court is unclear how this claim differs from Plaintiff's first argument of failure to train, especially given that Plaintiff asserts no evidence other than that discussed above. Further, Plaintiff also maintains that the City, through Chief Ivy, was "grossly negligent" in its failure to investigate the background of Holman.[4] By Plaintiff's own admission in this argument, Chief Ivy was at the most allegedly "negligent" or "grossly negligent." "Simple negligence or even heightened negligence will not support [municipal] liability." O'Neal v. City of San Antonio, 344 F. App'x 885, 888 (5th Cir. 2009) (citing Bryan Cnty., 520 U.S. at 407, 117 S. Ct. 1382); see also Hare v. City of Corinth, 74 F.3d 633, 645 (5th Cir. 1996) (en banc).

### 3. Municipal Liability – Moving Force

Even assuming Plaintiff could establish a custom or policy of the City, Plaintiff cannot show that such a policy was the "moving force" causing Plaintiff's alleged constitutional deprivations. To safeguard the boundaries established in Monell, the Supreme Court has made clear that in addition to a heightened standard of culpability, plaintiffs must meet a heightened standard of causation in order to hold a municipality liable under § 1983. City of Canton, 489 U.S. at 391-92, 109 S. Ct. 1197.

A Section 1983 plaintiff must prove that the municipal entity's custom or policy – in this case the failure to train – was the "moving force" that caused the specific constitutional violation; stated differently, the plaintiff must establish a "direct causal link" between the municipal policy and the constitutional injury. Bryan Cnty., 520 U.S. at 404, 117 S. Ct. 1382.

---

[4] While Chief Ivy appears to admit that he did not conduct the most thorough background check before hiring Holman, Chief Ivy had known Holman for twenty years, there was nothing in Holman's background regarding sexual misconduct, and Holman had graduated from the police academy and was certified under Mississippi law.

The Fifth Circuit has noted that the "connection must be more than a mere 'but for' coupling between cause and effect." Fraire v. City of Arlington, 957 F.2d 1268, 1281 (5th Cir. 1992). The deficiency in training must be the actual cause of the constitutional violation. Id. Accordingly, the City of Okolona must not be held liable simply because the culpable law enforcement officer worked for the City's police department. "[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." City of Canton, 489 U.S. at 385, 109 S. Ct. 1197.

Here, there is no indication that anything Chief Ivy did, or did not do, was the cause, much less the "moving cause," of Plaintiff's alleged rape. Even Holman testified that the police department would of course have a policy against rape. Further, Holman conceded that there would be a consequence if an officer were caught engaging in consensual sexual relations while on duty. As the Fifth Circuit held in Lewis, "[t]he actions of [Holman] in [allegedly] raping and assaulting [Plaintiff] . . . were entirely caused by [Holman]. There is simply no evidence in the record that [Holman] made the decision to [allegedly] rape [Plaintiff] for any reason related to any City policy or custom or understanding thereof which he may have had, or for any reason other than his own motivations for assaulting [Plaintiff]." 289 F. App'x at 775.

In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a Section 1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident. See Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985). However, the Supreme Court has repeatedly cautioned that if we neglect Section 1983's stringent standards, we risk collapsing the distinction between vicarious liability and direct liability. Bryan Cnty., 520 U.S. at 415, 117 S. Ct. 1382. Heightened standards guard against the potentially "endless exercise of second-guessing municipal

employee-training programs," a task for which federal courts are ill suited. City of Canton, 489 U.S. at 392, 109 S. Ct. 1197.

As such, the Court finds that the City of Okolona is entitled to judgment as a matter of law as to Plaintiff's Section 1983 claims.

*Municipal Liability under the Mississippi Tort Claims Act*

Through the MTCA, Mississippi waived its immunity in a limited fashion for certain tort actions. Univ. of Miss. Med. Ctr. v. Robinson, 876 So. 2d 337, 339 (Miss. 2004). By definition, the MTCA is the exclusive state remedy against a governmental entity and its employees for tortious acts or omissions which give rise to civil liability. MISS. CODE ANN. § 11-46-7(1); Elkins v. McKenzie, 865 So. 2d 1065, 1078 (Miss. 2003) (internal citations omitted); L.W. v. McComb Separate Mun. Sch. Dist., 754 So. 2d 1136, 1138 (Miss. 1999); Moore v. Carroll Cnty, Miss., 960 F. Supp. 1084, 1088 (N.D. Miss. 1997).

a. Chief Ivy's Supervision

Plaintiff first contends that Chief Ivy's alleged negligent supervision creates an action under the MTCA. However, governmental entities and employees are provided an exemption from liability under Mississippi Code Section 11-46-9(1)(d). That Code Section provides,

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: (d) based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

MISS. CODE ANN. § 11-46-9(1)(d). In determining whether governmental conduct is discretionary, this Court must consider (1) whether the activity involved an element of choice or judgment; and if so, (2) whether the choice or judgment in supervision involves social,

13

economic, or political policy alternatives. Bridges v. Pearl River Valley Water Supply Dist., 793 So. 2d 584, 588 (Miss. 2001).

Mississippi Code Section 21-31-21, which deals with a police officer's tenure and grounds for discipline, contains a series of reasons for discipline but offers no automatic situations requiring discipline. Therefore, this statute requires the City of Okolona to exercise its judgment in the manner in which it chooses to supervise its officers. See City of Jackson v. McLeod, 24 So. 2d 319, 321 (Miss. 1946). The decision "to employ and the manner of supervision of police officers does affect public policy, and the make-up of the police force inherently affects the social policy of a city." City of Jackson v. Powell, 917 So. 2d 59, 74 (Miss. 2005). Therefore, "[t]he manner in which a police department supervises, disciplines and regulates its police officers is a discretionary function of the government and thus the city is immune to suit under § 11-46-9(1)(d)." Id. Additionally, any claim that Plaintiff may have regarding the hiring of Officer Holman also falls under the MTCA. See A.B. ex rel. C.D. v. Stone Cnty. Sch. Dist., 14 So. 3d 794 (Miss. Ct. App. 2009) ("The duty to hire . . . is necessarily and logically dependent upon judgment and discretion.").

### b. Officer Holman's Actions

Plaintiff also brings a claim regarding Plaintiff's alleged rape by Holman. To any extent Plaintiff attempts to bring an action against the City of Okolona based on this act, the city is entitled to immunity. The MTCA specifically precludes actions against a governmental entity where the conduct of the employee constitutes fraud, malice, libel, slander, defamation or *any criminal offense*. MISS. CODE ANN. § 11-46-7(2) (emphasis added).

Plaintiff's argument, however, is not grounded in her rape claim against Holman. Rather, Plaintiff claims that the City can be held liable under the MTCA because the jury could find that

Holman did not rape her. Under this argument, the Court is not clear as to what the City would be held liable for; however, assuming Plaintiff could establish that Holman engaged in some other "noncriminal" sexual misconduct, the Court still finds immunity under the MTCA for the City of Okolona. The MTCA provides that the immunity of a governmental entity is only waived to the extent that a governmental employee is acting within the course and scope of his employment. MISS. CODE ANN. § 11-46-5.

Mississippi law provides that an activity must be in furtherance of the employer's business to be within the scope and course of employment. Estate of Brown By and Through Brown v. Pearl River Valley Opportunity, Inc., 627 So. 2d 308 (Miss. 1993). Whether an activity is within the scope and course of employment turns upon whether the activity carries out the employer's purposes or advances his interest directly or indirectly. Id. at 311. Thus, "if a servant steps aside from the master's business for some purpose of his own disconnected with his employment, the relation of master and servant is temporarily suspended and this is so 'no matter how short the time and the master is not liable for his acts during such time.'" Id. at 311. An employee's personal unsanctioned recreational endeavors are beyond the course and scope of his employment. See also Cook Constr. Co., Inc. v. Smith, 397 So. 2d 536 (Miss. 1981).

Clearly, Holman's actions, irrespective of whether they constitute rape or some other level of sexual misconduct, perpetuated his own purposes and not the purposes of either the police department or the City of Okolona. Therefore, the Court finds that Holman acted outside the course and scope of his employment. Thus, the City of Okolona is entitled to summary judgment as a matter of law as to Plaintiff's claims under the Mississippi Tort Claims Act.

## IV. MOTION TO STRIKE

The City of Okolona also brings a Motion to Strike Plaintiff's Expert Witness Joy Chapman or In the Alternative Motion In Limine to Exclude Testimony. At the outset, the Court notes that Defendant Holman has not joined in the City's Motion to Strike. Therefore, since summary judgment has already been granted to the City of Okolona, the Court need not consider the City's Motion to Strike.

## V. CONCLUSION

For the reasons stated above, the Court grants Defendant's Motion for Summary Judgment.

So ordered on this, the _4th__ day of October, 2010.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**