**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**ESPERONDA BAKER**                                                  **PLAINTIFF**

**V.**                                              **CIVIL ACTION NO: 1:09CV36-A-D**

**ROGERS LEE HOLMAN,**
**In His Individual Capacity**                                        **DEFENDANT**

<u>**MEMORANDUM OPINION**</u>

Plaintiff, Esperonda Baker, filed suit against former police officer, Rogers Lee Holman, in his individual capacity under 42 U.S.C. Section 1983 and state law on February 12, 2009. Plaintiff alleges that Holman raped her while he was on duty as a police officer with the City of Okolona. A trial was held in October 2010, and the jury rendered a verdict finding: (1) that Holman did not commit a sexual assault against Plaintiff; (2) that Holman acted negligently in engaging in sexual intercourse with Plaintiff; and (3) that Plaintiff was entitled to "0.00" in damages. Before the Court is Plaintiff's Motion for Judgment as a Matter of Law, Alternatively for a New Trial on Damages [129].

Plaintiff sets forth three separate grounds in support of her Motion. First, Plaintiff contends that the Court erred in its jury instruction on Plaintiff's 42 U.S.C. Section 1983 claim. Second, Plaintiff states that the Court erred in excluding Plaintiff's statements that she wished to take a polygraph examination. Third, Plaintiff urges that the jury's verdict is internally inconsistent. The Court considers each argument in turn.[1]

---

[1] The Court notes that the Defendant entirely failed to respond to Plaintiff's Motion.

## ANALYSIS AND DISCUSSION

<u>A.  Color of Law</u>

Plaintiff first alleges that the Court erred in the jury instruction it gave on Plaintiff's Section 1983 claim, thus claiming that a new trial is necessary.  The Federal Rules of Civil Procedure permits a trial court to grant a new trial based on that court's appraisal of the fairness of the trial and the reliability of the jury's verdict. FED. R. CIV. P. 59. The rule does not specify what grounds are necessary to support such a decision, but states only that the action may be taken "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A); <u>see</u> <u>also</u> <u>Smith v. Transworld Drilling Co</u>., 773 F.2d 610, 613 (5th Cir. 1985). A new trial may be granted, for example, if the district court finds that the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in the course of the trial. <u>See</u>, <u>e.g.</u>, <u>Eyre v. McDonough Power Equip., Inc</u>., 755 F.2d 416, 420-21 (5th Cir. 1985); <u>Westbrook v. Gen. Tire and Rubber Co</u>., 754 F.2d 1233, 1241 (5th Cir. 1985); <u>Carson v. Polley</u>, 689 F.2d 562, 570-71 (5th Cir. 1982); <u>Martinez v. Food City, Inc</u>., 658 F.2d 369, 372-74 (5th Cir. 1981); <u>Conway v. Chem. Leaman Tank Lines, Inc</u>., 610 F.2d 360, 363 (5th Cir. 1980).

The jury instruction given in this case reads as follows:

The Court instructs the jury that the right not to be sexually assaulted under color of state law is a clearly established federal constitutional right, and that being assaulted under color of state law violates the substantive due process clause of the United States Constitution.

A person acts under color of state law if he misuses power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. Under color of law means under pretense of state law.

*If you find by a preponderance of the evidence that: (1) Defendant intentionally committed acts that violated one or more of Plaintiff's federal constitutional rights; (2) In doing so, Defendant acted "under color" of the authority of the State of Mississippi; and (3) Defendant's acts were the legal cause of Plaintiff's damages, then you must find for the Plaintiff, Esperonda Baker.*

(emphasis added). Plaintiff asserts that the jury instruction should not have included a reference to whether the Defendant acted under color of state law. That is, Plaintiff asserts that this was error "since the evidence is clear that Defendant acted under color of state law." Plaintiff further asserts that the determination of whether one acted under color of state law is always a pure issue of law; thus, it should never be referenced in a jury instruction. The Court disagrees.

First, the above-italicized portion of the Court's instruction almost entirely mirrors the Fifth Circuit's pattern jury instruction for 42 U.S.C. Section 1983. To be clear, this pattern instruction does indeed state that the plaintiff must prove "the defendant(s) acted 'under color' of the authority of the State of _____."  Second, in United States v. Causey, 185 F.3d 407, 415-16 (5th Cir. 1999), the Fifth Circuit held that there was sufficient evidence for *the jury* to conclude that a police officer acted under color of state law in arranging for the murder of an individual who had filed a complaint against him with the internal affairs division of the police department.  Third, during an oral argument on this matter, Plaintiff relied on the case of United States v. Dillon, 532 F.3d 379 (5th Cir. 2008) for the proposition that a reference to under color of state law should not be contained within a jury instruction. Ironically, in

<u>Dillon</u>, the jury actually did consider whether the defendant was acting "under color" of law. On appeal to the Fifth Circuit, the <u>Dillon</u> court expressly held that "a reasonable *jury* could have found, considering the totality of the circumstances, that the[] [defendant's] statements were invocations of [the defendant's] authority." <u>Id.</u> at 387 (emphasis added); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Zambrana-Marrero v. Suarez-Cruz</u>, 172 F.3d 122, 128 (1st Cir. 1999) (jury question whether police officers acted under color of state law when beating and handcuffing civilian during altercation); <u>Jones v. Gutschenritter</u>, 909 F.2d 1208 (8th Cir. 1990) (police officer accompanied landlord when he disconnected tenant's electrical service; jury question whether landlord acted under color of state law); <u>Layne v. Sampley</u>, 627 F.2d 12, 13 (6th Cir. 1980) ("Although in certain cases, it is possible to determine the question whether a person acted under color of state law as a matter of law, there may remain in some instances unanswered questions of fact regarding the proper characterization of the actions for the jury to decide.").

Plaintiff also contends that the evidence was "clear" in this case that the Defendant acted under color of state law. Thus, the Plaintiff claims that she should be entitled to a judgment as a matter of law. Rule 50 of the Federal Rules of Civil Procedure sets forth the standard for granting judgment as a matter of law:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue . . . In ruling on a renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct entry of judgment as a matter of law.

FED. R. CIV. P. 50(a)(1), (b).

In applying this standard, the court must consider all of the evidence in the light most favorable to the nonmovant, drawing all reasonable factual inferences in that party's favor, and leave credibility determinations and the weighing of evidence to the jury. McCrary v. El Paso Energy Holdings, Inc., 209 F. Supp. 2d 649, 651 (N.D. Miss. 2002) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149-50, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). The court should grant a motion for judgment as a matter of law only when "the facts and inferences point so strongly and overwhelmingly in favor of [the moving] party that the court believes that reasonable [jurors] could not arrive at a contrary verdict." Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969).

In considering a Rule 50(b) motion for judgment as a matter of law following a jury verdict, the court must be "especially deferential" to the jury's findings. Brown v. Bryan Cnty, 219 F.3d 450, 456 (5th Cir. 2000). The Fifth Circuit's standard for evaluating a Rule 50(b) motion for judgment as a matter of law following a jury verdict is whether "the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict." Am. Home Assur. Co. v. United Space Alliance, 378 F.3d 482, 487 (5th Cir. 2004). A jury verdict must stand unless there is lack of substantial evidence, viewed in the light most favorable to the successful party, to support the jury's factual findings, or the legal conclusions implied from the jury's verdict cannot, in law, be supported by those findings. Id.

Section 1983 provides for a claim against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another's constitutional rights. 42 U.S.C. § 1983. A person acts under color of state law if he misuses "power 'possessed by

virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" <u>West v. Atkins</u>, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (quoting <u>United States v. Classic</u>, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941)). "Under 'color' of law means under 'pretense' of law." <u>Screws v. United States</u>, 325 U.S. 91, 111, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945); <u>see</u> <u>also</u> <u>Brown v. Miller</u>, 631 F.2d 408, 411 (5th Cir. 1980) (explaining that an act of an officer, not taken with authority or under cloak of authority, will not be considered under color of state law "simply because the individual, although pursuing private aims, happens to be a state officer"). "Acts of officers performing their official duties are included whether they hew to the line of their authority or overstep it, but acts of officers in the ambit of their personal pursuits are generally excluded." <u>Bustos v. Martini Club Inc.</u>, 599 F.3d 458, 464 (5th Cir. 2010) (internal quotations omitted). In other words, "if an officer pursues personal objectives without using his official power as a means to achieve his private aim, he has not acted under color of state law." <u>Id.</u> (citing <u>Townsend v. Moya</u>, 291 F.3d 859, 861 (5th Cir. 2002)).

The Fifth Circuit has given significant guidance on the question of whether one was acting "under color of law" when the officer was pursuing what at least could be construed as a "private" aim. For instance, in <u>United States v. Tarpley</u>, 945 F.2d 806, 809 (5th Cir. 1991), the Fifth Circuit held that a deputy sheriff acted under color of state law when he lured his wife's former lover to his home and assaulted him. The court noted that Tarpley did not "simply" use his service weapon and identify himself as a police officer. <u>Id.</u> He claimed to have authority for his actions because he was an officer of the law. <u>Id.</u> The court also found it significant that Tarpley summoned another officer to his house, who identified himself as a

fellow officer, and that they "proceeded to run [the victim] out of town in their squad car." Id. Because "[t]he presence of police and the air of official authority pervaded the entire incident," the court concluded that Tarpley acted under color of law, stating: "Under these circumstances, we are unwilling to say that no rational *juror* could find that Tarpley acted under color of law." Id. (emphasis added).

In Bennett v. Pippin, 74 F.3d 578, 589 (5th Cir. 1996), the Fifth Circuit held that the defendant – a sheriff – acted under color of law when he raped a woman whom he had just finished questioning about a shooting he was investigating. The sheriff responded to the victim's refusal of his advances by saying, "'I can do what I want, I'm the Sheriff.'" Id. Additionally, the sheriff admitted that he used his authority to discover that the victim's husband would not be home and had entered her property by virtue of his authority as sheriff, and it was established that the victim needed the sheriff's permission to retrieve her pickup truck. Id. These actions were held to have a "real nexus" with the sheriff's authority. Id.

As briefly discussed above, the Fifth Circuit, in United States v. Causey, 185 F.3d 407, 415-16 (5th Cir. 1999), held that the defendant – police officer Davis – was acting under color of law when he conspired to murder an individual who had filed an internal affairs complaint against him. In order to carry out the murder, officer Davis held a meeting with his co-conspirators at the police station, used his police car to show the co-conspirators where to find the victim, communicated with the co-conspirators via his police radio, secured the cooperation of his accomplices by assurance of police protection, and planned to use his official authority to cover up the murder at the crime scene. Id. at 415. The court held that Davis was uniquely able to do these things because of his position as a police officer, so there

was a sufficient nexus between his use and abuse of the power conferred on him by law and the murder to satisfy the color of law requirement. Id. at 415-16.

In contrast, the Fifth Circuit, in Townsend v. Moya, 291 F.3d 859, 860 (5th Cir. 2002), held that the defendant – a prison guard – did not act under the color of law when he stabbed Townsend, an inmate, after the two men entered into a game of "'come on'" in which they took turns referring to each other as "'my bitch'" or "'whore.'" In reaching this decision, the court held that the two men were engaging in horseplay, a purely private action, so the prison guard was not acting under color of law when he stabbed Townsend, even though he used "a knife he possessed by virtue of his position and authority." Id. at 862; see also, e.g., Delcambre v. Delcambre, 635 F.2d 407 (5th Cir. 1981) (chief of police *on duty* at police station assaults sister-in-law; not acting under color of law because victim not arrested or threatened with arrest).

Finally, in United States v. Dillon, 532 F.3d 379 (5th Cir. 2008), the Fifth Circuit found that an assistant city attorney (ACA) was acting under color of law when he sexually assaulted two women (Carolyn Carter and Sandy Carraby). The Dillon court began by noting that, while Dillon did not use equipment obtained through his official position to commit the sexual assault, his attacks were not disconnected from his position of authority. Id. at 386. The court noted that during trial, there was evidence presented that both Carter and Carraby initially met Dillon through his position as an ACA. Id. They came to his office because they believed that his position as an ACA enabled him to help them with their legal problems: Carter sought his fixing her tickets and help in having her son released from jail and Carraby thought he was going to give her a drug test so she could have her pending marijuana charge

dismissed. Id. The testimony of Carter and Carraby indicated that they thought that Dillon's position as an ACA put him in a position to help them. Id. However, even given this, the Fifth Circuit still noted that "the fact that Dillon took advantage of his position to initially become acquainted with his victims does not alone suffice to find that his subsequent assaults were under color of law." Id. The court stated that "[t]here needs to have been a more meaningful nexus between the defendant's use or abuse of his position of actual or ostensible authority and the actual commission of the offense." Id.

The Dillon court went on to examine whether, given the additional facts present in the case, a meaningful nexus existed as to find that Dillon was acting under color of law. Id. The court found that such a nexus existed because Dillon "verbally invoked his power before, during and after he sexually assaulted Carter and Carraby." Id. As to Carter, after Dillon placed a call to the judge who ultimately paroled Carter's son, he boasted that he told her he could "make it happen." Id. He then proceeded to kiss her and when she resisted he told her that he knew "a lot of police officers and he [could] have anybody arrested" and that Carter should "[q]uit acting like a baby" if she wanted her son out of jail. Id. Dillon, by his statements, also left Carter under the impression that he could have her son re-arrested at any time, in his effort to keep her from reporting him. Id. As to Carraby, Dillon told her that to get her marijuana charge dismissed, which he in effect had led her to believe he could and would do as an ACA, she would have to come to his "other" office for a (completely bogus) marijuana test. Id. Then, before sexually assaulting her there, Dillon told her that nobody would believe her if she reported him because she had a lewd conduct charge on her record. Id. Carraby also testified that Dillon warned her not to tell anyone about the assault or he

would "come after [her] and [her] family." Id.  The Fifth Circuit found that such statements

"clearly invoked [Dillon's] actual or perceived power as a city prosecutor . . . The statements

carried with them an air of official authority." Id. at 387.  Thus, Dillon was found to be acting

under color of law. Id.

At trial in this case, there were several heavily disputed factual allegations concerning

the events of the night in which Plaintiff alleges she was raped. Whether or not the Defendant

was in fact acting under color of state law is in part dependent upon the resolution of these

disputed facts.  That is, there were several factual questions presented during trial concerning

whether the Defendant in fact used his actual or perceived power as a police officer in order to

engage in sexual relations with the Plaintiff.  For example, at trial, Plaintiff maintained that

the Defendant came to her house stating that he needed some assistance concerning police

business. Specifically, Plaintiff asserted that the Defendant appeared at her house claiming

that he had chased some children to Plaintiff's aunt's house and that he needed Plaintiff's

assistance in locating the children. Plaintiff contended that this was the first time she had ever

met the Defendant and that she agreed to assist him. Plaintiff further alleged that, upon

leaving Plaintiff's home, the Defendant drove in the opposite direction of where they were

supposed to be going and, when he stopped the car, he raped her.

Defendant denied all of Plaintiff's allegations, asserting that he and the Plaintiff had

made plans to meet up later that night – specifically at 1:00 a.m. Defendant asserted that,

when Plaintiff failed to meet him at their designated time, he drove to her house. Defendant

contended that Plaintiff told him she had fallen asleep, and that, after arriving at Plaintiff's

house, Plaintiff voluntarily got in Defendant's car – not for the purpose of assisting in any

police business, but instead for the sole purpose of engaging in sexual intercourse as had been previously discussed. Given these contested factual allegations, the evidence is not quite as "clear" as Plaintiff asserts. Even if – as Plaintiff avers – the Defendant took advantage of his position to initially become acquainted with the Plaintiff, as the Fifth Circuit noted in <u>Dillon</u>, this fact "does not alone suffice to find that his subsequent assaults were under color of law." 532 F.3d at 386. Further, whether Defendant acted "under color of state law [is] not depend[ent] on his on- or off- duty status at the time of the alleged violation." <u>Bustos</u>, 599 F.3d at 464. If the jury accepted the Defendant's version of the facts, they could have found that the Defendant was not acting under color of state law. That is, a reasonable jury could have found that the Defendant, in engaging in sexual relations with the Plaintiff, acted in the ambit of his own personal pursuit, without using his official power as a means to achieve such a private aim. Thus, because there were numerous unanswered and disputed factual allegations concerning what exactly occurred between Plaintiff and Defendant on the night in question and that the jury instruction given in this case mirrors the Fifth Circuit's pattern instruction, the Court finds that it did not err in the jury instruction on Plaintiff's Section 1983 claim. As such, Plaintiff's Motion for Judgment as a Matter of Law or for a New Trial is denied.

B.  Polygraph-Related Evidence

Plaintiff next asserts that the Court erred when it excluded the Plaintiff's willingness to take a lie detector test. During trial, Plaintiff wished to introduce two different pieces of evidence: (1) the deposition of police offer Willie Moore, who stated that Plaintiff asked him to take a polygraph and that Plaintiff took and "did good" on the polygraph examination, and

(2) a statement from Plaintiff on July 16, 2010, to a highway patrol investigator stating that she wished to take a lie detector test. Plaintiff is not challenging the Court's decision to exclude Plaintiff's polygraph results; rather, Plaintiff only asserts that she should have been allowed to introduce evidence of her "offer" to take the polygraph test as evidence probative of her "truthfulness." At trial, the Court conducted a Federal Rule of Evidence 403 balancing test and determined that the evidence should be excluded.

While the Fifth Circuit has removed the per se barrier against the admissibility of polygraph evidence, see United States v. Posado, 57 F.3d 428, 433 (5th Cir. 1995), the Fifth Circuit has not directly addressed the admissibility of "offers" to take polygraph examinations. However, "[m]ost courts . . . have been wary of this type of self-serving evidence." United States v. Dinga, 609 F.3d 904, 908 (7th Cir. 2010). In Dinga, the defendant argued that his offer was relevant to his consciousness of innocence and credibility, and that it was especially probative in a case dependent on his credibility. Id. The defendant emphasized that he had not yet talked to an attorney and that his offer was genuine, without knowledge that the results of any such exam might not be admissible in court. Id. The district court excluded the evidence.

On appeal, the Seventh Circuit found no abuse of discretion. Id. at 909. The court began by noting that "[t]here has long been a debate over the admissibility of polygraph testing results," and "[a]s a general matter, the same is true of offers to take polygraph tests." Id. at 908. The court went on to find that,

A juror, having little understanding of the admissibility or reliability of any subsequent results, may erroneously believe that any offer necessarily meant Dinga was innocent. More importantly, Dinga's offer to take a test would only

be only marginally probative as to his credibility. Absent an agreement that polygraph results (favorable or not) would be admissible in court, Dinga had little at stake by expressing his willingness to submit to a polygraph test. No test was ever taken, and there is no way of knowing what Dinga knew about the subsequent admissibility of any such test results. He may have believed that the test would be taken and the results would be admissible, or he may have known that he would never submit to a test, or he may have believed that any results would be inadmissible in court. The great potential of confusing the issues and misleading the jury substantially outweighed any probative value of the offer as to Dinga's credibility. The district court's decision to exclude Dinga's "offer" to take a polygraph test was not an abuse of discretion.

Id. at 908-09; see also United States v. Burstein, 560 F.2d 779, 785 (7th Cir. 1977) (finding that an "offer of a willingness to submit to a polygraph is so unreliable and self-serving as to be devoid of probative value").

In contrast, the Sixth Circuit has shown slightly more willingness than the Seventh Circuit to allow polygraph evidence. For example, the court has noted that "*in limited circumstances*, evidence of a party's willingness to submit to a polygraph may, within the discretion of the trial court, become admissible if it is relevant." Wolfel v. Holbrook, 823 F.2d 970, 972 (6th Cir. 1987) (emphasis added). Recently, in United States v. Stephens, 148 F. App'x 385 (6th Cir. 2005), the Sixth Circuit addressed the issue of polygraph evidence and concluded that the district court did not abuse its discretion in refusing to permit defense counsel to elicit testimony that defendant had offered to take a lie detector test. The court noted that "the defendant did not agree to allow the result of the examination, whatever it might reflect, to be admitted into evidence. Thus, the defendant did not have the requisite adverse interest at stake to cloak his willingness with credibility." Id.[2]

---

[2] The Stephens court also excluded the evidence as irrelevant.

In Jones v. Geneva Pharmaceuticals, Inc., 132 F. App'x 772, 776 (10th Cir. 2005), the Tenth Circuit addressed the issue of the admissibility of the offer to take a polygraph in a civil action under the Age Discrimination in Employment Act. The district court, in excluding the evidence, viewed plaintiff's argument as an end run around Daubert v. Merrell Dowel Pharmacy, and found that any probative value the testimony would have was substantially outweighed by the danger of unfair prejudice under Rule 403. On appeal, the plaintiff asserted that the court erred by not allowing her to testify to her willingness to take a polygraph when she was not seeking to admit the polygraph results. The Tenth Circuit concluded that the district court did not abuse its discretion. The Tenth Circuit held as follows:

> Polygraph tests are generally inadmissible in this circuit. Palmer v. City of Monticello, 31 F.3d 1499, 1506 (10th Cir. 1994). If a party seeks to admit a polygraph test, that party must satisfy the criteria for admission under Daubert. United States v. Call, 129 F.3d 1402, 1404 (10th Cir. 1997). For this same reason, we agree with the District Court that testimony establishing that Ms. Jones simply offered to take a polygraph test is also inadmissible:

> By offering such evidence, the plaintiff intends the jury to presume that her submission to a polygraph examination would have revealed the truth. In other words, the probative value of the plaintiff's proffer is dependent upon the jury believing that the polygraph examination is a reliable indicator of honesty . . . . The plaintiff, however, has no intention of making the rigorous showing of the examination's reliability and effectiveness under Daubert or [FED. R. EVID.] 702. Thus, under these circumstances, permitting the plaintiff to testify as to her offer without first qualifying the polygraph testing under Daubert would be improper.

> Moreover, given that the probative value of Ms. Jones's proffered testimony rides on the reliability of the polygraph itself and that Ms. Jones does not wish to demonstrate the polygraph's reliability or effectiveness, we agree with the District Court that this evidence's probative value is substantially outweighed by the danger of unfair prejudice to Geneva. Therefore, we find no abuse of

> discretion in prohibiting Ms. Jones's proffered testimony that she offered to
> take a polygraph.

Id. (brackets in original).

The Ninth Circuit, in a brief opinion, addressed a similar issue in <u>United States v. Elekwachi</u>, 111 F.3d 139 (9th Cir. 1997). In <u>Elekwachi</u>, the district court excluded evidence of Elekwachi's willingness to take a polygraph examination, finding that such evidence would encourage the jury to speculate about the results of the polygraph examination. On appeal, Elekwachi contended that because the polygraph evidence was being introduced for a purpose unrelated to the results of a polygraph examination or whether one was ever administered, the district court abused its discretion in refusing to admit this evidence. Further, Elekwachi argued that, because he did not seek to introduce evidence of an actual polygraph examination or its results, that there was no reason for the jury to have speculated about the possible results of a polygraph. In addressing the issue on appeal, the Ninth Circuit first noted that "[a]lthough we recently held that <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) overrules the per se rule excluding unstipulated polygraph evidence, <u>United States v. Cordoba</u>, 104 F.3d 225, 228 (9th Cir. 1997), the decision of whether to admit polygraph evidence remains discretionary with the trial court." <u>Id.</u> Next, the court, in analyzing Federal Rule of Evidence 403, found that "[t]he fact that the defendant offered to submit to a polygraph had only slight probative value." <u>Id.</u> Thus, the court went on to hold that the

district court's determination that the evidence regarding a polygraph examination would unduly confuse the jury was not an abuse of discretion.[3]

While, as noted, the Fifth Circuit has not addressed the precise question at issue here, the Fifth Circuit did provide some relevant guidance in United States v. Posado. In removing the per se bar against the admissibility of polygraph results, the Posado court first admonished that "polygraph evidence" must meet the standard under Daubert and Rule 702. Posado, 57 F.3d at 434. Next, and more important to this case, the Posado court examined Federal Rule 403. Id. at 435. The court noted that several factors were present in Posado that boosted the probative value of the evidence under Rule 403, and simultaneously reduced any prejudice that might result. For example, in Posado, the opposing side was contacted before the tests were conducted and they were offered the opportunity to participate in the exams. Id. Similarly, the parties created stipulations as to any limited use for the evidence. Id. Due to this, both parties had a risk in the outcome. Further, the evidence was not offered at trial before a jury, but in a pretrial hearing before the district court judge. Id. The rules of evidence are relaxed in pretrial suppression hearings. See FED. R. EVID. 104(a).

While the Court agrees with the Plaintiff in this case that an offer to take a polygraph is much different than introducing the results of a polygraph examination, the Court nonetheless finds such evidence prejudicial under Rule 403. First, Plaintiff proffers the following reason as to why her offer to take a polygraph should have been admissible:

---

[3] The Elekwachi court's actual holding was as follows: "While it would not have been an abuse of discretion for the district court to have admitted this evidence, it was not an abuse of discretion to exclude it."

> Judging from the length of the jury deliberations, and the jury's note inquiring about damages, the jury obviously considered this a close case. The main issue was whether the jury believed the police officer's claim of voluntary sex or believed the Plaintiff's claim of rape.
>
> In view of the closeness of the case, and the jury's obvious difficulty in reaching a verdict, refusing to permit the evidence of an offer to take the lie detector may well have made the difference in this case.

Essentially, the bottom line of this argument is that the Plaintiff wishes to have the polygraph serve as a form of "tie-breaker" evidence. However, allowing in evidence at trial to function as a "tie-breaker" is not a reason under Rule 403 to find the evidence admissible; in fact – if anything – this demonstrates its potential for unfair prejudice. Furthermore, the Fifth Circuit in <u>Posado</u> actually addressed a similar argument. In <u>Posado</u>, the court noted that there were "factors" in the record that "substantially boost[ed] the probative value of the[e] evidence." 57 F.3d at 435. The court found that,

> the evidence at the suppression hearing essentially required the district court to decide between the story told by the officers and that told by the defendants, not an unusual situation, and perhaps *not sufficient alone to justify admission of "tie-breaker" evidence carrying a high potential for prejudicial effect. In this case, however, there was more.*

<u>Id.</u> (emphasis added). Unlike in <u>Posado</u>, here, there is not a myriad of additional factors in the record boosting the probative value of the polygraph-related evidence. Also unlike the <u>Posado</u> case, the Defendant here was not contacted before Plaintiff actually took the polygraph examination. Thus, there was not a stipulation of admissibility between the parties to the outcome of the test, and there is no way to know what Plaintiff knew about the subsequent admissibility of any such test results, especially the admissibility of negative results. This is even more true as to Plaintiff's "July 16, 2010" statement to a highway patrolman that she

wished to take a polygraph examination. Plaintiff was not only represented by counsel in 2010, but litigation in this case had already ensued; thus, Plaintiff could have easily known that the results of polygraph examinations are generally inadmissible. As such, she would have absolutely no adverse interest in making an offer to take such an exam.

Second, Plaintiff attempted to offer her willingness to take a polygraph during trial, not during a hearing conducted outside the presence of a jury.[4]  However, Plaintiff did not even attempt to establish the scientific reliability and validity of the actual polygraph under Daubert, instead only attempting to introduce the willingness to submit to the examination. By attempting to only offer Plaintiff's willingness to take the polygraph, Plaintiff sought to make an end-run around Daubert and have the jury merely presume (1) that such an examination would have and/or did establish Plaintiff's truthfulness, and   (2) that the polygraph itself is scientific and reliable. In other words, the probative value of Plaintiff's offer to submit to a lie detector is in large part dependent upon the jury believing that the actual polygraph is not only reliable, but also a scientific indicator of the Plaintiff's honesty. However, because Plaintiff did not even attempt to establish the scientific reliability of the polygraph, the jury had no way of knowing whether Plaintiff ever in fact took a polygraph or whether she even passed the examination.   Jurors have little understanding of the admissibility and/or reliability of the actual results of polygraph examinations, thus they may erroneously believe that any offer necessarily means that the Plaintiff's testimony is in fact true. See Digna, 609 F.3d at 908.  As the Tenth Circuit noted, "given that the probative value

_____

[4] See Posado, 57 F.3d at 435 (noting that "[a] district court judge is much less likely than a lay jury to be intimidated by claims of scientific validity into assigning an inappropriate evidentiary value to polygraph evidence").

of [the] proffered testimony rides on the reliability of the polygraph itself and that [the Plaintiff] does not wish to demonstrate the polygraph's reliability or effectiveness . . . this evidence's probative value is substantially outweighed by the danger of unfair prejudice." Jones, 132 F. App'x at 776.

To be clear, the Court is not holding that all offers to take polygraph examinations are inadmissible under Rule 403. However, the Court finds that, in this case, the probative value of such evidence is substantially outweighed by the danger of unfair prejudice and misleading the jury. Courts have long expressed distrust of polygraph evidence and, while the per se bar against admission of polygraph-related evidence has been removed, it appears that – in general – the distrust of such evidence remains.[5] See Digna, 609 F.3d 904; Jones, 132 F. App'x 772; Stephens, 148 F. App'x 385; Elekwachi, 111 F.3d 139; United States v. Gill, 513 F.3d 836 (8th Cir. 2008) ("Our cases make clear that polygraph evidence is disfavored."); United States v. Harris, 9 F.3d 493, 502 (6th Cir. 1993) (finding that the trial court did not abuse its discretion in excluding defendant's statement that he was willing to take a polygraph test); Wolfel, 823 F.2d at 974 (same, in the context of a prisoner's statement in a civil rights

---

[5] Plaintiff asserts that the court in Parks v. Mississippi Department of Transportation, 2006 WL 2483484 (N.D. Miss. 2006) extended the Fifth Circuit's decision in Posado to the "next logical step" by allowing in evidence the plaintiff's unwillingness to take a polygraph examination. While true, the Parks court was not faced with an issue similar to the issue in this case. That is, Parks was a Title VII action, and the defendant alleged that the plaintiff's failure to take a polygraph examination was part of its legitimate, non-discriminatory, non-retaliatory reason for terminating the plaintiff. The polygraph evidence in Parks served no other purpose than for use as this alleged legitimate reason for plaintiff's termination. Thus, the Parks court was not faced with an attempt to use the willingness or unwillingness to submit to a polygraph in order to show truthfulness, guilt, or innocence or any other use that would bear on the credibility of the individual. In fact, the Parks court did not undertake, or even need to undertake, a Federal Rule 403 analysis in order to reach its conclusion. As such, Parks is not applicable here.

action against a corrections officer); United States v. Sockel, 478 F.2d 1134, 1135-36 (8th Cir. 1973) (rejecting a defendant's claim of error arising from a district court's denial of the defendant's offer to take a polygraph exam in support of his motion to suppress); United States v. Graziano, 558 F. Supp. 2d 304, 325 (E.D.N.Y. 2008) (district court exercising its discretion to exclude evidence of an offer to take a polygraph); United States v. Koebele, 2008 WL 63293, at *5 (N.D Iowa Jan. 3, 2008) (holding that any references to a polygraph examination should be excluded);[6] Hisel v. Clarksville, 2007 WL 869722, at *1 (M.D. Tenn. Mar. 30, 2007) (excluding evidence of unwillingness to submit to a polygraph); Maddox v. Cash Loans of Huntsville, 21 F. Supp. 2d 1336, 1341 (N.D. Ala. Sept. 23, 1998) (holding in a Title VII case  that Plaintiff and her counsel were "prohibited from offering into evidence or mentioning . . . the results of the polygraph examination, the opinion of a polygraph examiner, or *any reference to an offer to take, failure to take, or taking of a polygraph examination*") (emphasis added).[7]   Accordingly, the Court finds that it did not err in finding Plaintiff's polygraph-related evidence unfairly prejudicial and misleading.

---

[6] The Koebele court's rationale for excluding such evidence is as follows:
> Polygraph examinations are, themselves, of dubious reliability  . . . so that mere references to polygraph examinations can have even less probative value . The court also doubts that a defendant's willingness or unwillingness to take a polygraph examination has any probative value whatsoever to issues of his guilt . . . where the test itself cannot be shown to provide reliable results. Thus, any weight jurors might give to evidence that a defendant was willing or unwilling to take a polygraph examination would likely be based on an improper emotional response, making such evidence unfairly prejudicial.

2008 WL 63293, at *5.

[7] But see:  United States v. Cathey, 2009 WL 3834107, at *4 (W.D. Ky. Nov. 13, 2009) (allowing evidence of defendant's willingness to take a polygraph when defendant was unrepresented by an attorney); United States v. Hamilton, 579 F. Supp. 2d 637, 639 (D.N.J. 2008) (same, but also giving a limiting instruction concerning the polygraph evidence).

<u>C.</u>  <u>Jury Verdict</u>

Plaintiff asserts that the jury's verdict concerning Plaintiff's claim for negligent infliction of emotional distress is internally inconsistent, and a new trial on damages is needed. When evaluating a claim that the jury's answers are inconsistent, the Seventh Amendment mandates that courts adopt a view of the case, if there is one, which resolves any seeming inconsistency. <u>See</u> <u>Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.</u>, 369 U.S. 355, 364, 82 S. Ct. 780, 7 L. Ed. 2d 798 (1962) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way."); <u>White v. Grinfas</u>, 809 F.2d 1157, 1161 (5th Cir. 1987) ("Courts are obligated to reconcile a jury's answers when possible."); <u>Griffin v. Matherne</u>, 471 F.2d 911, 915 (5th Cir. 1973) ("The Seventh Amendment requires that if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly.").  The test governing conflicts between the jury's answers is whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted. <u>Griffin</u>, 417 F.3d at 915. If the jury's answers cannot be rationally harmonized, the Court must vacate the judgment and order a new trial. <u>Crossland v. Canteen Corp.</u>, 711 F.2d 714, 726 (5th Cir. 1983).

Here, the jury found that the Plaintiff suffered reasonably foreseeable emotional harm, but should be awarded zero damages.  In the Fifth Circuit, the general rule is that a finding of liability but no damages does not always or necessarily render a verdict fatally inconsistent. <u>Rogers v. McDorman</u>, 521 F.3d 381, 396 (5th Cir. 2008).   However, after much

consideration, the Court finds that the verdict in this case is indeed internally inconsistent. In 1999, the Mississippi Supreme Court adopted a permissive view of the negligence-based infliction of emotion distress claim, allowing plaintiffs to "recover for emotional injury proximately resulting from negligent conduct," without any physical manifestation of harm "provided only that the injury was reasonably foreseeable by the defendant." Adams v. United States Homecrafters, Inc., 744 So. 2d 736, 743 (¶ 20) (Miss. 1999) (quoting Strickland v. Rossini, 589 So. 2d 1268, 1275 (Miss. 1991)). In 2001, the supreme court changed course, holding that "some sort of physical manifestation of injury or demonstrable physical harm" was required. Am. Bankers' Ins. Co. of Fla. v. Wells, 819 So. 2d 1196, 1209 (¶ 43) (Miss. 2001). Despite its contrary pronouncement, the supreme court in American Bankers' noted the conflicting views and explained that it had "applied the line of cases adopting the more restrictive majority view in the most recent holdings on this issue, although the cases applying the minority view [had] not been overruled." Id. More recently, in Wilson v. General Motors Acceptance Corp., 883 So. 2d 56, 65 (¶ 28) (Miss. 2004), the supreme court emphasized that "[e]ven in this more permissive line of cases [the court has] required a heavy burden of proof in order to establish a right to recover emotional distress damages." In 2010, in Evans v. Mississippi Dep't of Human Servs., 36 So. 3d 463 (Miss. Ct. App. 2010), the Mississippi Court of Appeals discussed the varying views on a claim for negligent infliction of emotional distress. The Evans court did not decide between the two differing views; however, the court did state that "[a] plaintiff must offer substantial proof of emotional harm, and the emotional injuries must be reasonably foreseeable from the defendant's actions." Id. at 476.

In order for the jury to have rendered a Plaintiff's verdict for negligence-based emotional distress, the jury must have found that the Plaintiff proved "substantial proof of an emotional harm" as well as "emotional distress damages" stemming from that harm. The jury must also have found that the Defendant caused such injuries. However, the jury essentially negated the finding of an actual emotional injury by rendering a verdict of zero damages. The Connecticut Supreme Court faced a similar issue in <u>Hall v. Bergman</u>, 296 Conn. 169, 994 A.2d 666 (2010). In <u>Hall</u>, the plaintiff brought claims of negligent infliction of emotional distress and intentional infliction of emotional distress, both of which under Connecticut law – like under Mississippi law – require proof of an actual injury. The jury rendered a verdict in favor of the plaintiff but then awarded zero damages. The Connecticut Supreme Court found as follows:

> Because we must presume that the plaintiff established actual injury . . . we also must presume that the plaintiff established damages stemming from that injury. As the Appellate Court observed, however, this presumption is inconsistent with the jury's award of zero damages. Consequently, the jury verdict in favor of the plaintiff is insolubly ambiguous. In other words, in such circumstances, it cannot be stated with certainty either that the jury found that the plaintiff had failed to prove any damages or that the jury was confused as to the correct interplay between damages and liability . . . . The appropriate course of action when such an ambiguous verdict is [returned] is to order a new trial on all issues.

<u>Hall</u>, 296 Conn. at 183, 994 A.2d at 674 (internal citations omitted); <u>see</u> <u>also</u> <u>Davis v. Hanson Aggregates Southeast, Inc.</u>, 952 So. 2d 330 (Ala. 2006) ("[A] finding that a defendant is liable to a plaintiff for negligence is inconsistent with an award of no damages."); <u>Fox v. Colony T.V. & Appliance, Inc.</u>, 37 Conn.App. 453, 656 A.2d 705 (1995) (holding that because the jury was instructed that the finding of liability involved a finding of negligence, which was a

substantial factor in causing the plaintiff's injuries, a plaintiff's verdict with zero total damages was inherently ambiguous); <u>Alabama Power Co. v. Epperson</u>, 585 So. 2d 919 (Ala. 1991) (holding that the trial court correctly granted the plaintiffs a new trial on the basis of the inconsistency of the award of no damages when that award was juxtaposed with the jury's finding of the defendant's liability in a negligence action); <u>Molinari v. Florida Key Elec. Co-op Ass'n, Inc.</u>, 545 So. 2d 322 (Fla. 3d DCA 1989) (finding that it was error to deny a motion for a new trial where jury awarded zero damages despite finding that appellant's injuries were caused, in part, by appellee's negligence). Given this, the Court finds that the jury's verdict cannot be reconciled and a new trial is warranted.

Plaintiff next urges the Court to only grant a partial new trial, specifically a new trial on damages. Rule 59 provides that a new trial may be granted "to all or any of the parties and on all or part of the issues . . . ." FED. R. CIV. P. 59(a). However, the Supreme Court has set forth an important limitation on the court's power to grant a partial new trial:

> Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice . . . . Here the question of damages on the counterclaim is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial.

<u>Gasoline Products Co. v. Champlin Refining Co.</u>, 283 U.S. 494, 500-01, 51 S. Ct. 513, 75 L. Ed. 1188 (1931). The Fifth Circuit has also recognized this limitation, noting that that a partial trial is proper only as long as "the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." <u>Colonial Leasing of New England, Inc. v. Logistics Control, Int'l</u>, 770 F.2d 479, 481 (5th Cir.1985); <u>see</u> <u>also</u> <u>Worsham</u>

v. City of Pasadena, 881 F.2d 1336, 1339 (5th Cir. 1989) (holding that the district court judge's decision to grant a complete retrial on both liability and damages was not an abuse of discretion because the liability issue, i.e., whether the City had violated the Constitution, was closely intertwined with the damages issue).  In this case, the Court concludes that because the issues of liability and damages on the tort of negligent infliction of emotional distress are inextricably interwoven, a retrial limited to damages alone would be ill-advised. Given the jury's verdict with respect to damages, one could reasonably question the validity of the verdict as to liability – or vice versa. See Miller v. Royal Netherlands Steamship Co., 508 F.2d 1103, 1106 (5th Cir. 1975) ("A finding by th[e] court that a critical verdict was inconsistent with another would require a remand for a new trial . . . since [the court] could not speculate which inconsistent finding the jury intended to be controlling.").  For these reasons, the Court finds that a new trial on both liability *and* damages for Plaintiff's negligence-based emotional distress claim is warranted.[8]

D.  Supplemental Briefing

Since the Court has concluded that the jury rendered an inconsistent verdict – thus mandating a new trial in this case – the Court requests supplemental briefing on Plaintiff's negligent infliction of emotional distress claim. That is, the Court requests supplement briefing on the validity of such a claim under Mississippi law. The jury rendered a verdict finding in favor of the Defendant on Plaintiff's Section 1983 action, and the grant of a new

---

[8] The Plaintiff never alleges that the jury's verdict was inconsistent as to her Section 1983 claim. However, to be clear, the Court notes that Plaintiff's Section 1983 claim is entirely separable and distinct from Plaintiff's negligence-based claim. The jury rendered a verdict in favor of the Defendant as to that claim, and that verdict is in no way inconsistent with the jury's other findings.

trial in this case does not extend to Plaintiff's Section 1983 claim, meaning the jury's verdict is a valid judgment. For the jury to have rendered such a verdict, they must have necessarily found that the Defendant did not commit a sexual assault against the Plaintiff (i.e., that the Defendant did not rape the Plaintiff). Thus, Plaintiff's negligence-based emotional distress claim appears to be premised on the notion that the Defendant acted negligently in engaging in *consensual* sexual relations with the Plaintiff. During trial on this matter, the Defendant never moved for a judgment as a matter of law on such a claim – nor did the individual Defendant ever file a motion to dismiss or a motion for summary judgment. However, given that the Court is granting Plaintiff's motion for a new trial, the Court requests that the parties provide briefing on whether such an action states a valid claim under state law. The Court will provide a briefing schedule and date for a new trial by separate order.

## CONCLUSION

For the foregoing reason, Plaintiff's Motion is granted in part and denied in part. The Motion is denied insofar as it relates to Plaintiff's claims that the Court erred in its jury instruction on the Section 1983 action and that the Court erred in excluding under Rule 403 Plaintiff's willingness to take a polygraph examination. Plaintiff's Motion is further granted in part and denied in part as to Plaintiff's assertion that the jury rendered an inconsistent verdict. The Court finds that the jury's verdict was inconsistent, but also finds that a new trial on damages alone would be ill-advised. Thus, a new trial on both damages and liability is necessary. The Court also requests supplemental briefing from the parties on the validity of Plaintiff's negligence-based emotional distress claim. A separate order will be issued by the Court providing a briefing schedule and a new trial date.

So ordered on this, the __13th__ day of _____June_____, 2011.

**/s/   Sharion Aycock_____**
**UNITED STATES DISTRICT JUDGE**